RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DEDE STRATTON,

*Plaintiff-Appellant,*

*v.*

No. 13-6574

PORTFOLIO RECOVERY ASSOCIATES, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington
No. 5:13-cv-00147—Danny C. Reeves, District Judge.

Argued: June 19, 2014

Decided and Filed: October 24, 2014

Before: KEITH, BATCHELDER, and STRANCH, Circuit Judges.

_____

### COUNSEL

**ARGUED:** James H. Lawson, LAWSON AT LAW, PLLC, Louisville, Kentucky, for Appellant. Joseph N. Tucker, DINSMORE & SHOHL, LLP, Louisville, Kentucky, for Appellee. **ON BRIEF:** James H. Lawson, LAWSON AT LAW, PLLC, Louisville, Kentucky, for Appellant. Joseph N. Tucker, DINSMORE & SHOHL, LLP, Louisville, Kentucky, for Appellee.

STRANCH, J., delivered the opinion of the court, in which KEITH, J., joined. BATCHELDER, J. (pp. 13–19), delivered a separate dissenting opinion.

---

**OPINION**

---

JANE BRANSTETTER STRANCH, Circuit Judge. This case involves the intersection of the usury law, "society's oldest continuous form of commercial regulation," Robin A. Morris, *Consumer Debt and Usury: A New Rationale for Usury*, 15 Pepperdine L. Rev. 151, 151 (1988); debt buying, "one of the most financially lucrative businesses you can get into," Victoria J. Haneman, *The Ethical Exploitation of the Unrepresented Consumer*, 73 Mo. L. Rev. 707, 712 (2008) (citation and internal quotation marks omitted); and the Fair Debt Collection Practices Act (FDCPA), whose purpose is to protect consumers by "eliminat[ing] abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e). Kentucky's usury statute sets the legal rate of interest for all loans made in that state at 8%. Ky. Rev. Stat. § 360.010(1). However, the statute merely provides a default rule—the parties to a contract can agree to a different rate of interest if they so desire. But what happens if a creditor waives its contractual right to collect the interest it contracted for in the original agreement? Can the creditor or its assignee then claim a right to collect interest based on the statutory rate that the contract displaced? If not, would the assignee's attempt to collect that interest constitute a violation of the FDCPA?

Under Kentucky law a party has no right to statutory interest if it has waived the right to collect contractual interest. And any attempt to collect statutory interest when it is "not permitted by law" violates the FDCPA. The district court held otherwise; we reverse and remand.

**FACTS & PROCEDURAL HISTORY**

On December 19, 2008, after Dede Stratton stopped making payments on her credit card, GE Money Bank "charged off" Stratton's $2,630.95 debt—GE determined that the debt was uncollectible and at least partially worthless. *See McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 518 (E.D. Mich. 2013). GE also stopped charging Stratton interest on her debt. GE's decision was neither irrational nor altruistic: By charging off the debt and ceasing to

charge interest on it, GE could take a bad-debt tax deduction, I.R.C. § 166(a)(2), and could avoid the cost of sending Stratton periodic statements on her account, 12 C.F.R. § 226.5(b)(2)(i). *See also McDonald*, 296 F.R.D. at 525. A little more than a year later, in an increasingly common practice, *see Bartlett v. Portfolio Recovery Assocs.*, 91 A.3d 1127, 1132 (Md. 2014), GE assigned its interest in Stratton's charged-off debt to PRA. According to industry norms, PRA would have paid anywhere between 4 and 14 cents on the dollar for Stratton's debt. *See* Fed. Trade Comm'n, *The Structure and Practices of the Debt Buying Industry* at ii (2013).

PRA is a "debt buyer." "The most significant change in the debt collection business in recent years has been the advent and growth of debt buying." Fed. Trade Comm'n, *Collecting Consumer Debts: The Challenges of Change* at 13 (2009). Judge Kollar-Kotelly provides an overview of the debt-buying industry:

> To recoup a portion of its lost investment, an originating lender may sell a charged-off consumer loan to a Debt Buyer, usually as part of a portfolio of delinquent consumer loans, for a fraction of the total amount owed to the originating lender. Once a Debt Buyer has purchased a portfolio of defaulted consumer loans, it may engage in collection efforts (or hire a third-party to do so), which may include locating borrowers, determining whether borrowers are in bankruptcy, commencing legal proceedings, or "otherwise encouraging" payment of all or a portion of the delinquency.

*Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 4 (D.D.C. 2006) (internal citations omitted). The industry has expanded rapidly. Debt buyers now pay billions of dollars to purchase tens of billions of dollars of consumer debt each year, most of it charged-off credit card debt like Stratton's. Debt buyers usually purchase bad debts in bulk portfolios, often in the form of a spreadsheet, and rarely obtain the underlying documents relating to the debt. *See* Fed. Trade Comm'n, *The Structure and Practices of the Debt Buying Industry* at ii–iii. Debt buying has attracted increasing attention from regulators. *See* Bureau of Consumer Fin. Prot., Debt Collection (Regulation F), 78 Fed. Reg. 67,847, 67,850 (Nov. 12, 2013) (advance notice of proposed rulemaking).

Two years after buying Stratton's debt, PRA filed suit against her in Kentucky state court. The complaint alleged that Stratton "owes [PRA] $2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008[,] until the date of judgment with 12% per annum thereafter until paid, plus court costs." There are two things to note in this sentence: First, PRA alleged that Stratton owed interest during the 10 months after GE charged off her debt and before GE sold that debt to PRA. Second, PRA alleged that Stratton owed 8% interest rather than the 21.99% interest established in her contract with GE. The 8% interest rate did not appear out of thin air—it is the default rate set by Kentucky's usury statute, section 360.010 of the Kentucky Revised Statutes.

Stratton then filed a putative class action against PRA in the Eastern District of Kentucky, alleging that PRA's attempt to collect 8% interest for the period between the date GE charged off Stratton's debt and the date it sold that debt to PRA violated the FDCPA. In particular, Stratton alleged that the 8% interest was not "expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1), that PRA had falsely represented the "character" of Stratton's debt and the "amount" she owed, § 1692e(2)(A), and that PRA's suit to recover interest it was not owed was a "threat" to take an "action that cannot legally be taken," § 1692e(5).

The district court dismissed Stratton's case. The court held that section 360.010 gave PRA a right to "prejudgment interest" and that, consequently, PRA could not have violated section 1692f(1) of the FDCPA. Further, the court concluded that, taken together, "even an unsophisticated consumer would have understood that" the allegation in PRA's complaint "was just a request" rather than a "false representation" prohibited by section 1692e(2)(A). Finally, the court concluded that PRA's suit was not a "threat" within the meaning of section 1692e(5) because "[t]he state court collection action was a lawful vehicle for PRA to recover the debt Stratton owes."

Stratton appealed.

**STANDARD OF REVIEW**

We review *de novo* a district court's grant of a rule 12(b)(6) motion. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013). A complaint, which need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must be read in the light most favorable to the plaintiff. The plaintiff's allegations must be accepted as true, the complaint must be read "as a whole," and all reasonable inferences must be drawn in the plaintiff's favor. *Matrixx Initiatives, Inc., v. Siracusano*, 131 S. Ct. 1309, 1323 (2011). The ultimate question is whether the complaint, read sympathetically, shows that the plaintiff is at least plausibly entitled to relief. *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). And "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**ANALYSIS**

**A. Kentucky's Usury Statute**

"Absent a contractually agreed upon rate, the appropriate rate of interest is governed by statute." *Reliable Mech., Inc. v. Naylor Indus. Servs., Inc.*, 125 S.W.3d 856, 857 (Ky. Ct. App. 2003). Section 360.010(1) of the Kentucky Revised Statutes provides, in relevant part:

> The legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate[;] . . . and any such party or parties, and any party or parties who may assume or guarantee any such contract or obligation, shall be bound for such rate of interest as is expressed in any such contract, obligation, assumption, or guaranty, and no law of this state prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto or in connection therewith. . . . .

There is no question that GE and Stratton "agree[d], in writing, for the payment of interest in excess of that rate." *Id.* And for the purposes of this appeal, PRA concedes that GE waived its right to collect interest at the contractually agreed upon rate of 21.99%. The question is whether GE's waiver of its right to contractual interest could somehow give it or PRA, GE's assignee, the

right to collect statutory interest.  In other words, can someone collect interest if they agree not to collect interest?  The answer must be no.

The plain text of the statute supports this conclusion.  It states that any assignee "*shall be bound* for such rate of interest as is expressed in any such . . . assumption" and that "no law of this state prescribing . . . interest rates shall apply to any such agreement or to any charges which pertain thereto."  Ky. Rev. Stat. § 360.010(1) (emphasis added).  Nothing in the statute suggests that a contracting party retains the option to charge statutory interest.  Rather, Kentucky's usury statute states a default rule—it applies until displaced by a contract, whereupon the contracting parties and their assignees "shall be bound" by the terms of their agreement and the statutory rate shall not apply.  *Id.*  A party's right to collect statutory interest is extinguished, superseded by her right to collect an interest rate she has specified by contract.  A court must honor that party's choice—even if it is a choice it or its assignee later regrets.

But what if a party waives its bargained-for right to collect contractual interest?  Does the waiver somehow resurrect that party's forgone right to statutory interest?  The district court concluded that GE's waiver of its right to collect contractual interest allowed it (and PRA as its assignee) to seek statutory interest.  Given the plain text of the usury statute and basic principles of waiver and freedom of contract, we must disagree.  A waiver is "a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party at his option might have demanded or insisted upon."  *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 344 (Ky. Ct. App. 2001) (quoting *Greathouse v. Shreve, Ky.*, 891 S.W.2d 387, 390 (Ky. 1995)).  GE concededly waived its right to collect contractual interest, a right it had acquired in part by forgoing its right to collect statutory interest.  GE gave up the right to collect 8% statutory interest when it had Stratton agree to a 21.99% contractual rate of interest.  GE cannot recover the right it bargained away simply because it later chose to waive the right for which it bargained.  GE and any party "who may assume or guarantee any such contract or obligation[] shall be bound by such rate of interest;" GE's choices are binding and "no law of

this state prescribing or limiting interest rates shall apply" to relieve it of the consequences of those choices. Ky. Rev. Stat. § 360.010(1).[1]

PRA, as GE's assignee, moreover, "acquire[d] no greater right than was possessed by [its] assignor . . . but simply stands in the shoes of the latter." *Whayne Supply Co. v. Morgan Constr. Co.*, 440 S.W.2d 779, 782–83 (Ky. 1969). PRA cannot be given a right to collect interest—contractual or statutory—that GE waived. Based on the limited record before the panel, Stratton has plausibly alleged that PRA does not have a legal right to collect interest on her debt.

It may be that the discovery process could reveal some contractual provision that entitles PRA to collect some sort of interest, but there is currently no such provision before us. And it is true that in certain cases, Kentucky law permits courts to award prejudgment interest as a matter of equity to fully compensate a prevailing party. *See Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 144 (Ky. 1991). But PRA did not request that the court exercise its equitable discretion to award interest. Instead, PRA asserted that it had a *legal* right to "$2,630.95, with interest thereon at the rate of 8% per annum" as a *factual* matter. Section 360.010(1) makes clear that PRA had no such right.

## B. The FDCPA

"The Fair Debt Collection Practices Act is an extraordinarily broad statute" and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014); *Brown v. Card Serv. Ctr.*,

---

[1]The dissent relies upon decisions interpreting the prejudgment interest statutes of other states. But the usury statutes of those states do not contain Kentucky's mandatory language that bars the imposition of statutory interest after a contractual rate of interest has taken effect. For example, Missouri's statute provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

> Mo. Rev. Stat. § 408.020; *see also* Wash. Rev. Code § 19.52.010. As a result, courts construing such statutes may determine that the particular state regime does not treat creditors so strictly after they waive a contractual rate of interest. *See Peters v. Northland Grp.*, No. 14-0488-CV, 2014 WL 4854658, (W.D. Mo. Sept. 30, 2014); *Grochowski v. Daniel N. Gordon, P.C.*, No. C13-343, 2014 WL 1516586 (W.D. Wash. Apr. 17, 2014). Such differences among statutes reinforce the need to read Kentucky's statute carefully and apply its particular language.

464 F.3d 450, 453 (3d Cir. 2006) ("Because the FDCPA is a remedial statute, . . . we construe its language broadly, so as to effect its purpose."). The FDCPA is a strict-liability statute: A plaintiff does not need to prove knowledge or intent, *see, e.g.*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011), and does not have to have suffered actual damages, *see, e.g., Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437 (6th Cir. 2008). Structured as such, the FDCPA functions both to protect the individual debtor and advance the declared federal interest in "eliminat[ing] abusive debt collection practices." 15 U.S.C. § 1692(e); *see also Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995). Strict liability places the risk of penalties on the debt collector that engages in activities which are not entirely lawful, rather than exposing consumers to unlawful debt-collector behavior without a possibility for relief. *Cf.* Guido Calabresi & Jon T. Hirschoff, *Toward a Test for Strict Liability in Torts*, 81 Yale L.J. 1055, 1060 (1972). By allowing a prevailing plaintiff to recover attorneys' fees, Congress further placed the cost of enforcing the FDCPA squarely on the group that could most easily ensure that the Act is not violated—the debt collectors themselves. The FDCPA protects both consumers and honest and ethical debt collectors who might otherwise be impelled to adopt their competitors' more profitable bad practices to avoid being "completely disadvantaged." 15 U.S.C. § 1692(e).

Here, the district court set out a vision of the FDCPA, a vision PRA advances, at odds with Congress's. The district court distinguished "claims made in court from the type of abusive tactics most often invoked under the FDCPA" and saw "no need to invoke the protections" of the Act "when a claim is made to the court," (quoting *Argentieri v. Fisher Landscapes, Inc.*, 15 F. Supp. 2d 55, 62 (D. Mass. 1998).[2] Both Supreme Court precedent and the other traditional tools of statutory construction make clear that the district court's understanding of the FDCPA is untenable.

---

[2]Judge Gertner, who authored *Argentieri*, has repeatedly cautioned against misreading her words. "Taken out of context," she wrote, "this [sentence] could seem to indicate that claims made to a court simply are not covered by the FDCPA. I want to emphasize now that I intended no such reading. My point was meant to be taken in the context of the facts of this case." *Argentieri v. Fisher Landscapes, Inc.*, 27 F. Supp. 2d 84, 85–6 (D. Mass. 1998). In *Harrington v. CACV of Colorado, LLC*, Judge Gertner reiterated that her sentence in *Argentieri* "was not meant to exempt all conduct in state court proceedings," and noted that "the FDCPA itself clearly contemplates federal liability for at least some collector conduct that occurs in state court." 508 F. Supp. 2d 128, 136 (D. Mass. 2007).

First, the Supreme Court has already held that the FDCPA "applies to the litigating activities of lawyers," *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) and "imposes some constraints on a lawyer's advocacy," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600 (2010). "Litigating . . . seems simply one way of collecting a debt," *Heintz*, 514 U.S. at 297, that could be used, especially against an unsophisticated consumer, in an unfair or deceptive manner. Indeed, the original FDCPA expressly exempted attorneys but—as the Supreme Court has explained—in 1986 "Congress repealed this exemption in its entirety . . . without creating a narrower, litigation-related exemption to fill the void." *Id*. at 294. Second, in addition to the 1986 amendment, even the original version of the Act reflected Congressional concern with abusive litigation tactics. The Act contains a "fair venue" provision, 15 U.S.C. § 1692i, to combat "the problem of 'forum abuse,' an unfair practice in which debt collectors file suit . . . in courts which are so distant or inconvenient that consumers are unable to appear" in order for the debt collector to a obtain default judgment against the consumer, S. Rep. No. 95-382, at 5 (1977). *See also Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 639 (7th Cir. 2014) ("[O]ne common tactic for debt collectors is to sue in a court that is not convenient to the debtor, as this makes default more likely; or in a court perceived to be friendly to such claims; or, ideally, in a court having both of these characteristics."). And, third, after *Heintz*, Congress amended section 1692e to "expressly exempt[] formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007). As the Fourth Circuit explained, "[t]he amendment by its terms in fact suggests that all litigation activities, including formal pleadings are subject to the FDCPA, except to the limited extent that Congress exempted formal pleadings from the particular requirements of § 1692e(11)." *Id*. (emphasis in original). In sum, absent strong evidence of an exemption, the FDCPA's protections are available wherever unscrupulous debt collection practices might be found—and most certainly in litigation. *See Hartman v. Great Seneca Fin. Corp*., 569 F.3d 606, 615–16 (6th Cir. 2009).

The FDCPA prohibits both "false, deceptive, or misleading representations or means in connection with the collection of any debt," 15 U.S.C. § 1692e; and "unfair practices"—"unfair or unconscionable means to collect or attempt to collect any debt," *id*. § 1692f. Consistent with

the Act's expansive reach, both sections provide a list of unlawful conduct "without limiting the general application of" each section's broad prohibition of "false or misleading representations" and "unfair practices." *Id*. §§ 1692e, 1692f. Thus section 1692e forbids both "[t]he false representation of . . . the character, amount, or legal status of any debt," § 1692e(2), and the "threat to take any action that cannot be legally taken," § 1692e(5). And section 1692f(1) prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." But the listed examples of illegal acts are just that—examples. *See Currier*, 762 F.3d at 536. Sections 1692e and 1692f "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." S. Rep. 95-382, at 4.

To determine whether a debt collector's conduct runs afoul of the FDCPA, "[c]ourts must view any alleged violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases." *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007) (internal quotation marks and citations omitted); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008). As we have explained:

> 'The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.' [*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).] 'This effort is grounded, quite sensibly, in the assumption that consumers of below-average sophistication or intelligence are especially vulnerable to fraudulent schemes.' *Id.* at 1319. The standard thus serves a dual purpose: 'it (1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices.' *Id.* at 1320.

*Gionis*, 238 F. App'x at 28. As the drafter of the complaint, PRA "is responsible for its content and for what the least sophisticated [consumer] would have understood from it." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014).

Under this standard, and given the plain language of the act and its expansive purpose, it is clear that Stratton has alleged a number of plausible FDCPA violations. *See Currier*, 762 F.3d at 536 (stating that the FDCPA's broad provisions "are not mutually exclusive"). Because PRA does not have the right to collect interest on Stratton's debt, PRA's allegation to the contrary is a "false representation" of the "character" and "amount" of Stratton's debt. § 1692e(2); *see also*

*Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). PRA's state court suit is an "attempt" to collect an "amount"—$2,630.95 plus 8% interest—that is neither "expressly authorized" by any agreement in the record nor "permitted by law." § 1692f(1). And from the perspective of the least sophisticated consumer it is also a "threat" by PRA "to take action that cannot legally be taken"—namely, to recover 8% interest. In *Currier*, this court adopted the reasoning of our prior unpublished opinion in *Gionis* that complaints, liens, and other "[c]ourt filings can be a threat under the FDCPA." *Currier*, 762 F.3d at 535 (citing *Gionis*, 238 F. App'x at 28–29). Stratton's suit should not have been dismissed.

PRA argues that its "request" for statutory interest "was merely an aspirational request to the state court, not a representation of the legal status of the debt." PRA seriously mischaracterizes its complaint. PRA's allegation was not, as the district court incorrectly stated, placed in the "prayer for relief" section of the complaint. And although in some cases "the simple request for costs in an unstated amount, where such costs are permitted by state law . . . is not a false representation and does not violate" the FDCPA, this is true not because there is a special rule for requests but because the implied representation is accurate. *Clark v. Main Street Acquisition Corp.*, 553 F. App'x 510, 514-15 (6th Cir. 2014). PRA's allegation was hardly a "request," simple or otherwise. PRA's numbered allegations in the complaint included that "The Defendant(s) *owes* Plaintiff $2630.95, with interest thereon at the rate of 8% per annum." (Emphasis added.) Never mind the least sophisticated consumer standard—even a sophisticated consumer would read that numbered paragraph from the complaint to be a factual allegation rather than an "aspirational request." Thus, PRA's argument fails for two reasons: PRA's allegation was not a "simple request" and there is no protection for a representation that is inaccurate. Saying that Stratton owed $2630.95 plus whatever interest the court chooses to award is simply not the same as saying that Stratton owed $2630.95 plus 8% interest from the date GE charged off her account. PRA averred the latter. It is therefore plausible that PRA's complaint falsely represents both the "character" and "amount" of Stratton's debt. An unsophisticated consumer would most certainly have been misled.

**CONCLUSION**

Basic principles of contract law and statutory construction bind PRA to its and its assignor's business decisions. The FDCPA governs debt collection in or out of court; it does not allow debt collectors to use litigation as a vehicle for abusive and unfair practices that the Act forbids. The district court's judicial gloss conflicts with the text and purpose of the FDCPA and ignores the reality of the debt collection business, where "some debt collectors have foregone all meaningful attempts to communicate with debtors and have instead opted to file lawsuits against debtors en masse in an effort to collect enforceable default judgments." Matthew R. Bremner, *The Need for Reform in the Age of Financial Chaos*, 76 Brook. L. Rev. 1553, 1587 (2011); *see also Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1256 (11th Cir. 2014) ("A deluge has swept through U.S. bankruptcy courts of late. Consumer debt buyers . . . are filing proofs of claim on debts deemed unenforceable under state statutes of limitations."). By alleging in a complaint that a consumer owes interest that had in fact been waived, a debt collector may be able to secure a default judgment for an amount the consumer does not actually owe. *See Suesz*, 757 F.3d at 639. The FDCPA proscribes such practices.

We hold that Stratton has plausibly alleged that PRA violated the Fair Debt Collection Practices Act. We REVERSE the district court's order dismissing the case and remand for proceedings consistent with this opinion.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting.  We are the first circuit court to interpret Kentucky Revised Statutes Annotated § 360.010.  The district court concluded quite reasonably that PRA complied with state law in attempting to collect the debt owed by Stratton.  The majority opinion reverses, based on a different, but plausible, construction of § 360.010.  We have said repeatedly "that Congress did not turn every violation of state law into a violation of the FDCPA."  *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014).  The majority construes the statute differently than PRA and the district court do, and based on this first-impression construction holds that PRA thus violated *federal* law.  This "gotcha!" maneuver impermissibly expands the scope of the FDCPA, exposing debt collectors to liability under federal law whenever we later determine a debt collector's reasonable construction of an as-yet uninterpreted state law is wrong.  I respectfully dissent.

**I.**

The majority asks—and then answers—the wrong question.  The question is not, "can someone collect interest if they agree not to collect interest?"  Maj. Op. at 6.  The question instead is whether someone can collect *statutory* interest after they agree not to collect *contractual* interest. And while the plain text of the statute might answer the question raised by the majority, it does not answer the question posed by this case.

Section 360.010 states,

> The legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate[;] . . . and any such party or parties, and any party or parties who may assume or guarantee any such contract or obligation, shall be bound for such rate of interest as is expressed in any such contract, obligation, assumption, or guaranty, and no law of this state prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto or in connection therewith . . . .

The one Kentucky case to comment on this provision, *Reliable Mechanical, Inc. v. Naylor Industrial Services, Inc.*, parroted the statute: "Absent a contractually agreed upon rate, the appropriate rate of interest is governed by statute." 125 S.W.3d 856, 857 (Ky. Ct. App. 2003).

Two other district courts have construed prejudgment interest rate statutes nearly identical to Kentucky's and both have concluded that charging post-charge off interest under a state's default prejudgment interest rate is permissible "even if interest was waived at the contractual rate." *Peters v. Fin. Recovery Servs., Inc.*, No. 14-cv-00489, 2014 WL 4723287, at *2 (W.D. Mo. Sept. 18, 2014) (interpreting Missouri Revised Statutes § 408.020, which states, "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon"); *see also Grochowski v. Daniel N. Gordon, P.C.*, No. C13-343 TSZ, 2014 WL 1516586, at *3 n.2 (W.D. Wash. Apr. 17, 2014) (holding that "[c]ontrary to plaintiff's assertion, Capital One's decision to forego the contractual rate of interest did not relinquish its right to seek prejudgment interest at the statutory rate," under Washington Revised Code § 19.52.010, which states, "Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties . . . .").

PRA argues that "[b]ecause there was no contractually agreed upon rate being assessed after charge-off, the statutory rate under KRS § 360.010 applied as a matter of law." The district court agreed, reasoning that although "a creditor may not collect both contractual interest and statutory interest for the same time period . . . . Stratton points to no authority that even suggests that the decision to forego contractual interest means that statutory interest may not be collected." The district court said that "[b]ecause GE was no longer charging interest under the contract," GE was not "bound for such rate of interest," meaning the legal rate of interest applied. Thus, only assessment or enforcement of the contract rate—not merely agreement to a different, higher rate—displaces the legal rate of interest.

Further evidence that this interpretation is at least reasonable is found when comparing § 360.010 to § 360.040, which governs postjudgment interest. Section 360.040 provides, "A judgment shall bear twelve percent (12%) interest compounded annually from its date. A judgment may be for the principal and accrued interest; but if rendered for accruing interest on a

written obligation, it shall bear interest in accordance with the instrument reporting such accruals, whether higher or lower than twelve percent (12%)." Because the legal rate of interest is displaced "whether higher or lower than twelve percent," it is harder to construe § 360.040 as a default interest-rate floor. The legal rate of interest in § 360.010, on the other hand, is displaced only where the payment of interest is "in excess of" the legal rate, providing some support for PRA's argument that the legal rate of prejudgment interest applies absent an assessment of the higher contractual rate.

We should dismiss Stratton's complaint, however, whether or not we agree with PRA's interpretation of § 360.010. Prior to this case, no court—either federal or state—had held that an unassessed contractual prejudgment interest rate precludes imposition of the default legal prejudgment interest rate. And the district court's decision—supplemented by a comparison with Kentucky's postjudgment interest statute—demonstrates both that the plain language of the statute does not resolve this dispute, and that PRA's interpretation is a reasonable one.

To impose liability on PRA under the FDCPA for its reasonable resolution of a state-law question that federal and state courts have not only yet to resolve, but have never even addressed, extends the reach of the FDCPA too far. *See Carlson v. First Revenue Assur.*, 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation."). Creditors under this scheme are now faced with a Hobson's choice: do nothing and go bankrupt, or attempt to collect a debt and risk violating federal law. And, of course, the real victims are high-risk consumers for whom credit becomes more expensive.

## II.

Particularly pernicious is the majority's holding that Stratton has stated a claim under § 1692e(5). Section 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." In this case, however, PRA actually filed a state court complaint; it did not *threaten* to do so.

We instructed in *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 611 (6th Cir. 2009), that "[w]hen interpreting the FDCPA, we begin with the language of the statute itself."

(internal quotation marks omitted).  Although § 1692e broadly prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," Stratton pleaded a violation of § 1692e(5), which specifically requires a "threat."  The majority is right that we may "proscribe other improper conduct which is not specifically addressed" under § 1692e, but Stratton has not alleged a violation of § 1692e and § 1692e(5) does not authorize the majority to ignore the specific textual requirement.

To hold that PRA threatened to take illegal action the majority must mean either (1) filing a complaint can be a "threat" within the meaning of § 1692e(5), or (2) § 1692e(5) penalizes even actions that have already been taken.  Neither proposition is true.

**A.**

We have never held that filing a complaint is itself a "threat" within the meaning of § 1692e(5).  The source of authority for the majority's contrary conclusion is our unpublished opinion in *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24 (6th Cir. 2007).  But in *Gionis* the actual "threat" to recover unauthorized attorney fees appeared in an affidavit appended to the complaint, not in the complaint itself.  We said explicitly that the "unlawful 'threat' to collect attorney fees was made in the Affidavit," *id.* at 29, which was intended to communicate directly with the debtor; the complaint was not itself the "threat."  Both *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783 (S.D. Ohio 2006), and *Poirier v. Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997), are similarly distinguishable.

The reason for excluding complaints from "threat" liability should be clear.  If filing a court complaint is per se a "threat," then every time a debt collector loses in court it has threatened to take action it may not legally take—it has thus violated the FDCPA.  The "least sophisticated consumer" standard does not mean that every time a debt collector makes a reasonable mistake of fact or law it has thus violated federal law.  To hold that Congress contemplated such a scheme defies belief.

I agree with the majority that "formal pleadings" are not "entirely exempt from the FDCPA." *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007).  In *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 435 (6th Cir. 2006), for instance, we held

that a law firm that represented creditors was not exempt from liability under the FDCPA where it filed affidavits seeking garnishment of funds but "did not conduct a debtor's exam, did not undertake discovery as to whether Plaintiff possessed non-exempt assets, and otherwise had no factual basis for believing that Plaintiff's bank account contained non-exempt assets." And in *Currier*, we held that "filing and maintaining an invalid lien" triggered liability under § 1692e(5). 762 F.3d at 535; *see also Hartman*, 569 F.3d at 616 (holding that litigation activities are not immune from FDCPA liability).

As I discuss in Part I, however, PRA's conduct in this case is different. PRA reasonably construed an ambiguous state law that had yet to be interpreted by *any court*. This is precisely the kind of technical, state-law violation the FDCPA does not reach.

**B.**

Nor does § 1692e(5) penalize completed acts. Several district courts have erroneously premised liability on actions already taken. *See, e.g., Foster*, 463 F. Supp. 2d 783; *Poirier*, 107 F.3d 347. Their reasoning, unsurprisingly, has nothing to do with what § 1692e(5) actually says: "The opposite conclusion would be akin to attaching liability to one who merely threatens a tortious act while absolving one who unabashedly completes it. It is safe to say that such an interpretation veers sharply from the legislative purpose behind the FDCPA." *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006).

But giving effect to the text of § 1692e(5) does not absolve a creditor from liability. A creditor who files a complaint seeking to collect a false debt, for example, risks liability under numerous FDCPA provisions, including § 1692e(2)(A), § 1692f(1), and § 1692e. Stratton has even pleaded violation of some of these provisions here. A creditor does not "avoid the strictures of the FDCPA," *Marchant v. U.S. Collections W., Inc.*, 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998), if we give effect to the plain language of § 1692e(5).

The unpublished (and, hence, nonbinding) opinion in *Gionis* described the difference between an attempt to collect a debt via a complaint and a "threat" as solely a "metaphysical" distinction created by "semantical recasting." 238 F. App'x at 28–29. I doubt the recipient of a murder threat would so easily dismiss a distinction between the threat, on the one hand, and

attempted murder or murder, on the other.  By labeling statutory interpretation "semantics" (which, after all, approximates its dictionary definition), the *Gionis* court dismissed the shocking proposition—required by the usual rules of statutory interpretation—that by including the word "threat" in § 1692e(5) Congress actually meant something.  *See Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) ("[R]egardless of the legality of Defendants' filing of the Ironton complaint, Defendants did not *threaten* to take that action, but actually took it by filing the complaint."); *see also Dicesari v. Asset Acceptance LLC*, No. 11-CV-6815, 2012 WL 4108944, at *3 (E.D. Pa. Sept. 18, 2012) ("Because the Plaintiff only alleged an actual action taken—namely, the filing of the state court complaint—and points to no other threats of action, the Court dismisses Plaintiff's claim under § 1692e(5)."); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) ("Because section 1692e(5) prohibits only threats, and because the complaint alleges an illegal act, not a threat, it does not come within section 1692e(5)."); *Wehrheim v. Secrest*, No. IP 00-1328-C-T/K, 2002 WL 31242783, at *5 (S.D. Ind. Aug. 16, 2002) ("Plaintiff's claims in the instant case are based upon actions actually taken by Defendant.  The court rejects Plaintiff's attempt to equate threats of action with actions actually taken.").

But the fundamental error made by *Gionis* and the majority in this case is in applying the "least sophisticated consumer" standard.  This standard affects how we construe a creditor's conduct; it is not a principle of statutory interpretation.  We misapplied this standard in *Gionis*, where we admitted that even though the debt collector had not actually violated § 1692e(5), it was liable anyway.  We said "there was (technically speaking) no 'threat to take any action that cannot *legally* be taken,'" because "applicable law" permitted the recovery of attorney fees.  *Id.* at 28.  As the majority does here, *Gionis* rewrote § 1692e(5) to afford greater protection to debtors than Congress intended.  After *Gionis*, apparently, the statute now prohibits the "threat to take action that *a debtor might think* cannot legally be taken."

The only "metaphysical" distinction is the majority's attempt to distinguish statements made in the body of the complaint from statements made in the prayer for relief.  The majority thinks that "[s]aying that Stratton owed $2630.95 plus whatever interest the court chooses to award is simply not the same as saying that Stratton owed $2630.95 plus 8% interest from the

date GE charged off her account." Maj. Op. at 11. This distinction is meaningless to the hypothetical least sophisticated consumer. The majority opinion is premised on the belief that the least sophisticated consumer is both a genius and an idiot.

I confess that this distinction makes no sense to me. Under the majority's reasoning we are either authorized to award prejudgment interest under § 360.010, or we are not. If not, we cannot "exercise our discretion" and award interest anyway. Distinguishing an appeal to the court's discretion from an attempt to collect a fixed amount is even inconsistent with *Gionis*, where we said that a debt collector violated § 1692e(5) even though an affidavit attached to the state-court complaint mentioned recovering attorney fees only "to the extent permitted by applicable law." 238 F. App'x at 28. Perhaps, despite invoking *Gionis* repeatedly, the majority realizes *Gionis* went too far.

I respectfully dissent.