NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0493n.06

Case No. 16-5468

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 23, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DEDE STRATTON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| PORTFOLIO RECOVERY ASSOCIATES, | ) | KENTUCKY |
| LLC, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

_____/

Before: MERRITT, KETHLEDGE, and WHITE, Circuit Judges.

**MERRITT, Circuit Judge.** This is a Fair Debt Collection Practices Act ("Act") case, now before us for the second time, brought by a plaintiff debtor, Dede Stratton, against a defendant debt collection agency, Portfolio Recovery Associates, LLC ("Portfolio"). The only question before this court is whether Portfolio violated federal law by attempting to collect prejudgment interest of 8% per annum on a credit card debt in a Kentucky state-court collection action. Portfolio has not changed its position in its subsequent pleadings or briefs that it was entitled to collect the original card debt of "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008 until date of judgment with 12% per annum thereafter until paid, plus court costs."

This case is here for the second time because both parties failed to allege or disclose the existence of a credit card agreement applying Utah law – a fact disclosed only after we remanded the case to the district court. Stratton asserts that Kentucky law rather than Utah law applies, and that Portfolio violated the federal Act by filing a collection action in Kentucky state court for interest on a credit card debt when it had no right to collect the interest under Kentucky law. To prove that Portfolio violated the Fair Debt Collection Practices Act, Stratton must prove that Portfolio was entitled to neither statutory nor contractual interest. Portfolio now argues that the credit card agreement proves Portfolio's right to collect statutory interest on the debt under Utah law. The district court granted Portfolio's motion for summary judgment on remand, finding that Utah law applied and that Stratton failed to demonstrate that Portfolio had violated the Act when it filed the collection action. Stratton now appeals again, claiming that the district court improperly relied on a Utah choice-of-law provision in the credit card agreement between Stratton and her original creditor, GE Money Bank, and that the court should have applied Kentucky law.

We conclude that the application of the choice-of-law provision is dispositive in this case. Utah law applies and Portfolio did not violate the Fair Debt Collection Practices Act. As the assignee of the right to collect Stratton's credit card debt, Portfolio received the rights and obligations arising from Stratton's original credit card contract, including the right to invoke the Utah choice-of-law provision. The rights of Portfolio as assignee are subject to all terms of the agreement between the account debtor and the assignor. Accordingly, the Utah choice-of-law provision applies, and under Utah law Portfolio was entitled to file a collection action for prejudgment interest in Kentucky state court without violating the Fair Debt Collection Practices Act. Since the only question before this court is whether Portfolio violated the Act, we conclude

that the district court properly granted summary judgement to Portfolio. The collection action is a matter for Kentucky's Scott County state court.

## I. Factual and Procedural Background

In September 2007, Dede Stratton opened a credit card account with GE Money Bank, F.S.B./Lowes ("GE"). On December 19, 2008, GE "charged off" the account, declaring to the credit bureaus that it had given up trying to collect Stratton's unpaid debt. At the time, Stratton's debt was $2,630.95, and GE ceased charging interest on it. Before the debt was charged off, the contractual rate of interest on the debt was set in the Credit Card Agreement at 21.99%.

Portfolio, a company primarily engaged in the business of purchasing debt from creditors and collecting those debts, purchased Stratton's $2,630.95 credit card debt from GE on January 4, 2010. More than two years later on January 20, 2012, Portfolio filed a collection action in Kentucky to collect the debt from Stratton. Importantly, Portfolio alleged in the collection action complaint that Stratton owed $2,630.95 with interest "*at the rate of 8% per annum from December 19, 2008 until date of judgment* with 12% per annum thereafter until paid, plus court costs." (emphasis added).[1] Kentucky sets the legal statutory rate of interest on loans at 8%. Ky. Rev. Stat. § 360.010(1). Stratton then sued Portfolio in federal court under the Fair Debt Collections Practice Act. Stratton argued that since GE had previously "waived" its right to collect interest, Portfolio, as GE's assignee, did not inherit a right to collect any interest. She asserted that Portfolio's collection action violated the Fair Debt Collections Practice Act by: (1) pursuing a collection action that was not "expressly authorized by the agreement creating the debt or permitted by law" in violation of 15 U.S.C. § 1692(f)(1), (2) falsely representing the

---

[1] At the time of the collection action, Kentucky law allowed for 12% post-judgment interest. Ky. Rev. Stat. § 360.040.

character of the debt under 15 U.S.C. § 1692(e)(2)(A), and (3) illegally "threat[ening]" Stratton with the state court action under 15 U.S.C. § 1692(e)(5).

Portfolio filed a 12(b)(6) motion to dismiss Stratton's claim, and the district court granted the dismissal. But this court reversed, holding that Stratton had alleged a plausible claim for relief. *See Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 451 (6th Cir. 2014). The decision held that under Kentucky law, prejudgment statutory interest rates are waived where the parties are bound to a contractual interest rate, and that GE and Stratton had a binding contractual rate. *See id.* at 447. When GE allegedly waived the contractual interest rate, it could not revive a right to collect statutory interest.[2] *See id.* at 447–48. Consequently, under Kentucky law GE's assignee, Portfolio, also had no right to statutory interest. *See id.* at 448. Since under Kentucky law Portfolio had illegally attempted to collect the interest, we found that Stratton had plausibly alleged that Portfolio had violated the Fair Debt Collection Practices Act. *See id.* at 452.

However, when the Sixth Circuit remanded the case to the district court we noted that, "[i]t may be that the discovery process could reveal some contractual provision that entitles [Portfolio] to collect some sort of interest." *Id.* at 448. The case is before this court again because Portfolio has found such a provision. During discovery on remand, Portfolio obtained the original Credit Card Agreement between GE and Stratton and amended its Answer to Stratton's complaint to include the Agreement. Portfolio claimed that a Utah choice-of-law provision in the Agreement changes the outcome of the case in its favor. Portfolio distinguished

---

[2] When we first heard this case in 2014, Portfolio conceded for the purposes of that appeal that GE Bank waived the right to collect interest at the contractually agreed upon rate of 21.99%, leaving only the issue of statutory interest. *See Stratton*, 770 F.3d at 447. Portfolio does not make that concession during this current appeal. However, whether the right to contractual interest was waived does not impact the outcome of this appeal, since we hold that *under Utah law*, unlike under Kentucky law, Portfolio's right to collect prejudgment statutory interest was preserved. Portfolio attempted to collect interest at 8% per annum – below the authorized Utah statutory rate *and* the contractual rate. Accordingly, as long as Portfolio has either a statutory or a contractual right to interest, it did not violate the Fair Debt Collection Practices Act.

the Utah language from the language in the Kentucky code, claiming that the Utah language allows a creditor (or debt collector) to collect statutory interest even if the right to collect contractual interest is established and then waived. *See* U.C.A. § 15-1-1.

After Portfolio produced the Credit Card Agreement, both parties moved for summary judgment before the district court. Stratton also filed a motion to strike the Credit Card Agreement from the record. The district court again found for Portfolio, dismissing Stratton's claim. The court held that the original Credit Card Agreement between GE and Stratton was admissible evidence and that the Agreement applies Utah law to GE's assignee, Portfolio. The court also found that Utah law permits Portfolio to pursue statutory interest in lieu of contractual interest. Since Stratton must prove Portfolio was entitled to neither statutory nor contractual interest to prove her federal Fair Debt Collection Practices Act claim, Stratton's claim failed in its entirety and was dismissed.

Stratton again appeals, arguing that: (1) Portfolio is judicially estopped from arguing that Utah law applies; (2) the Credit Card Agreement is hearsay that should not have been admitted; (3) Portfolio did not acquire GE's contractual rights under the Credit Card Agreement, only the right to collect Stratton's debt; (4) since the Credit Card Agreement's choice-of-law provision does not apply, Kentucky law, not Utah law, governs whether the right to collect statutory interest was waived; (5) under Kentucky law, Portfolio had no right to collect the statutory or contractual interest and therefore violated the Fair Debt Collection Practices Act; and (6) the bona fide error defense does not protect Portfolio.

## II. Analysis

### A. Admissibility of the Credit Card Agreement

At the district court on remand, Portfolio entered the original Credit Card Agreement between GE and Stratton into evidence through the Business Records Exception to the hearsay rule. Stratton contests the admissibility of this Agreement. Federal Rule of Evidence 803(6) states the following exception to the rule against hearsay:

> A record, of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The document at issue is a ten page credit card contract that does not contain Stratton's name, but does contain a branch designation number (C822) matching at least one of the other documents in Stratton's account-records. The document also states the undisputed contractual interest rate of 21.99 %. Portfolio supplemented this Credit Card Agreement with an affidavit by Portfolio's Senior Vice President of Core Operations, Tara Privette. Privette attested to Portfolio's debt purchasing process, whereby some documents associated with the accounts are transmitted directly from banks to Portfolio, while others are held by the bank until Portfolio requests them. After Stratton, who no longer had her copy of the Agreement, submitted a discovery request to Portfolio, Portfolio sent a request to GE for a copy of Stratton's Agreement pursuant to Portfolio's practice with GE. GE obliged, and Privette verified that the document was consistent with the rest of the records applicable to Stratton's account.

The district court did not abuse its discretion in admitting the Credit Card Agreement. *See United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005). Stratton fails to make convincing arguments why this Credit Card Agreement is an unreliable record of her contract with GE. The agreement is not a document "prepared specifically for use in litigation." *See Melendez-Diaz v. Massachussets*, 557 U.S. 305, 321 (2009). Nor is there any specific reason to doubt that the document was properly integrated into Portfolio's records. *See Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999).

The affidavit by Privette is sufficient to establish her reliability as a custodian of the Credit Card Agreement. *See United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) ("[The] information must be presented through the 'testimony of the custodian or other qualified witness[.]'") (quoting Fed. R. Evid. 803(6)). Privette attested to the routine procedures followed in obtaining a document from an original creditor and the document transfer process specifically between GE and Portfolio. The business records exception does not require that a custodian have personal knowledge, but only that she "be familiar with the company's recordkeeping practices." *See Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 328 (6th Cir. 2015). While Privette did not create the document, she is familiar with Portfolio's record-keeping practices and qualifies as a custodian of the records in Stratton's account. *See id.* Further, she attested that she requested and received the contract from GE. Accordingly, the district court properly admitted the Agreement.

### B. Assignment of Stratton's Debt to Portfolio

While the Credit Card Agreement is admissible, there is also disagreement between the parties whether GE's contractual rights and obligations under the Agreement transferred to Portfolio. As a preliminary matter neither party is estopped from making arguments concerning

whether Portfolio has rights under the Credit Card Agreement. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("several factors typically inform the decision whether to apply the [judicial estoppel] doctrine . . . a party's later position must be clearly inconsistent with its earlier position") (internal quotation marks omitted). At prior litigation stages the Agreement had not yet been found, and so no arguments concerning the rights under the Agreement and its choice-of-law provision were "inconsistent." *See Engel v. Buchan*, 791 F. Supp. 2d 604, 608 (N.D. Ill. 2011). Since neither party had an opportunity to affirmatively litigate those issues until discovery, permitting the parties to make the arguments now does not threaten the "integrity of the judicial process" by allowing arguments in bad faith. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982).

Stratton claims that Portfolio cannot rely on the original Credit Card Agreement because Portfolio did not acquire GE's contractual rights in the Credit Card Agreement when it bought Stratton's debt. Specifically, Stratton argues that Portfolio purchased the "receivables," associated with Stratton's account but not the "account" itself. In support of this position Stratton references the "Bill of Sale" between GE and Portfolio and the corresponding "Forward Flow Receivables Purchase Agreement." The Bill of Sale between GE and Portfolio for the debt reads in relevant part:

> For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Receivables Purchase Agreement (the "Agreement"), dated this 28th day of August, 2009 by and between General Electric . . . (collectively "Seller") Portfolio Recovery Associates, LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, *the Receivables* as set forth in the Notification Files (as defined in the Agreement), delivered by Seller to Buyer . . . .

(emphasis added). The Bill of Sale also came with a "Forward Flow Receivables Purchase Agreement" between GE and Portfolio that defines "receivable" and "account" separately,

defining "receivables" in a circular manner as "any retail credit card receivable relating to an unsecured credit card account owned by Seller that is being sold to Buyer pursuant to the terms of this Agreement," and "account" as "any retail credit card account owned by Seller with respect to which there is a [r]eceivable." Because the agreements refer only to the transfer of "the [r]eceivables," Stratton argues that we should interpret "receivable" according to its plain meaning. Stratton asserts that we should look to Black's Law Dictionary, which defines "receivable" as "an amount owed, esp. by a business's customer." BLACK'S LAW DICTIONARY (10th ed. 2014).

It is clear that Portfolio is an assignee of GE for the purpose of collecting the debt. The rights of assignees are generally subject to all the terms of an agreement between the debtor and the assignor unless explicitly limited in the agreement. *See* U.C.C. § 9-404 ("the rights of an assignee are subject to all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract"); KRS 355.9-404; *see also Martin v. Cavalry SPV I, LLC*, 2014 WL 1338702 at *6 (E.D. Ky. March 31, 2014). Stratton's original Credit Card Agreement with GE states, "[w]e may sell, assign or transfer any of our rights or obligations under this Agreement or your Account." The Forward Flow Agreement between GE and Portfolio states that "Seller shall sell and Buyer shall buy all right, title and interest in and to the Receivables. . . ." GE's rights, title, and interest in and to the Receivables included the Utah choice-of-law provision. That is, if GE was seeking to collect the amount owed by Stratton, it would be entitled to the benefits of Utah law. We therefore conclude that Portfolio now stands in GE's shoes as an assignee of the right to collect Stratton's debt. *See* Restatement (Second) of Contracts § 325 cmt. a (1981) ("The creditor typically delivers to the assignee a written instrument addressed to the debtor directing the debtor

to pay all or part of the debt to the assignee. . . The writing is an *assignment*.") (emphasis added).

Since Stratton's signed contract with GE is the basis of her debt, and is therefore the basis of her claim against Portfolio, the rights and obligations of that contract should continue with the assignment. *See Sears, Roebuck & Co. v. Lea*, 198 F.2d 1012, 1015 (6th Cir. 1952). Stratton cannot pick and choose which provisions of that contract are enforceable. *See id.* GE's contractual rights and obligations under the Credit Card Agreement transferred to Portfolio.

### C. Choice of Law

Due to Portfolio's status as GE Bank's assignee, the choice-of-law provision in Stratton's Credit Card Agreement with GE was assigned to Portfolio. The Agreement's Utah choice-of-law provision states in relevant part:

> This Agreement and your Account and any claim, dispute or controversy arising from or relating to this Agreement or your Account, whether based on contract, tort, fraud and other intentional torts, statute, common law, and/or equity, are governed by and construed in accordance with federal law, and to the extent that state law applies, the laws of the State of Utah (without regard to internal principles of conflicts of law). The legality, enforceability and interpretation of this agreement and the amounts contracted for, charged and received under this Agreement will be governed by such laws. This Agreement is entered into between you and us in Utah. . . .

Whether Portfolio was entitled to request prejudgment interest from Stratton is an issue of substantive law, and therefore an issue to be decided under the laws of the state designated in the contract's choice-of-law provision. *See Miller Truck Lines, LLC v. Central Refrigerated Serv., Inc.* 781 F. Supp 2d 488, 497 (W.D. Ky. 2011). Kentucky follows the Restatement (Second) of Conflict of Laws, which says that the law of the state chosen by the parties to govern their contractual rights and duties will be applied, unless "the chosen state has no substantial relationship to the parties or the transaction" or "application of the law of the chosen state would

be contrary to a fundamental public policy[.]" Restatement (Second) of Conflict of Laws § 187(2) (1971). The first exception does not apply because GE had Utah citizenship at the time of contracting – a clear substantial relationship to the state. As for the public policy exception, the Kentucky Supreme Court has held that absent a "clear and certain statement of strong public policy in controlling laws or judicial precedent" the decision of the contracting parties must be respected. *See State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 880 (Ky. 2013). Here, Stratton advances no well-defined or dominant public policy that invalidates the choice-of-law provision. Since neither exception is applicable, the Utah choice-of-law provision applies to the dispute in this case.

### D. Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act provides, in effect, that there would be a violation of federal law if Portfolio's attempt to collect interest was unauthorized under Utah law.[3] At oral argument, Stratton's counsel frankly admitted that "[their] brief does not articulate a path to victory under Utah law," and that they would be "in a world of hurt if Utah law applies." As this case effectively hinges on whether Utah law or Kentucky law applies, the contractual Utah choice-of-law provision settles this matter. Since all of the alleged violations are contingent on whether Portfolio was authorized to collect the claimed interest under Utah law, all of Stratton's claims necessarily fail. We **AFFIRM**.

---

[3] The Fair Debt Collection Practices Act states that a debt collector may not falsely represent "the character, amount, or legal status of any debt," may not threaten "to take any action that cannot legally be taken" (such as an illegal state court collection action), or to collect interest "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *See* 15 USC §§ 1692(e)(2)(A), 1692(e)(5), 1692(f)(1).