**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0350n.06

Case No. 14-5663

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 11, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALAN FAMBROUGH, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WAL-MART STORES, INC., et al., | ) | TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: SILER, ROGERS, and COOK, Circuit Judges.

**SILER, Circuit Judge**. Six individual automated teller machine (ATM) users (collectively, the ATM Users) appeal the district court's grant of summary judgment on their claims asserted under 15 U.S.C. § 1693 in favor of defendants Wal-Mart Stores, Inc. (Wal-Mart) and Satellite Receivers, LTD, d/b/a Cash Depot (Cash Depot). For the reasons explained below, we **REVERSE**.

**I.**

This case arises out of six separate ATM transactions in Tennessee and Mississippi. The individual ATM Users filed an amended consolidated complaint on behalf of themselves and others similarly situated in the Western District of Tennessee. The six ATM Users each individually alleged that either Wal-Mart or Cash Depot violated 15 U.S.C. § 1693 *et seq.*, known as the Electronic Fund Transfer Act (EFTA), when the defendants failed to place exterior fee notices on the ATMs used by the ATM Users.

Although the relevant portion of the EFTA was subsequently amended,[1] at the time this cause of action arose, it required ATM operators to post both an "on-machine" fee notice and an "on-screen" fee notice. 15 U.S.C. § 1693b(d)(3)(B)(i) & (ii) (2010); 12 C.F.R. § 205.16(c) (2001).[2] A fee notice alerts ATM users who withdraw cash that a fee will be charged. Under the EFTA, the safe harbor defense relieves defendants of liability if they posted the required notice and if the notice was later removed, damaged, or altered by a third party. 15 U.S.C. § 1693h(d).

### a. The Wal-Mart ATM Users

Wal-Mart is a major retailer of consumer goods, and in some of its locations, it has Money Center Express machines (MCX machines), which offer ATM and other financial services to its customers. In their complaint, three individual ATM Users alleged that they each used Wal-Mart MCX machines that lacked an external fee notice at the time. Individuals who use Wal-Mart MCX machines to withdraw cash are charged a $1.50 ATM fee. The ATM Users do not dispute that the Wal-Mart MCX machines may have provided them with an on-screen notice that they would be charged a $1.50 fee for a cash withdrawal. Notably, Wal-Mart often engages vendors such as National Cash Register (NCR) to service its MCX machines.

Wal-Mart moved for summary judgment and alleged that it was entitled to the safe harbor defense.[3] In support of this defense, Wal-Mart submitted the declaration of Kam Lam, the Senior Manager of Innovations, Delivery, and Technology at Wal-Mart, and a number of purported business records attached to Lam's declaration, which contained crucial records to support Wal-Mart's safe harbor defense. Wal-Mart also submitted Lam's deposition in support

---

[1] *See* 15 U.S.C. § 1693b(d)(3)(B) (2012) ("The notice . . . shall appear on the screen of the automated teller machine, *or* on a paper notice issued from such machine . . . .") (emphasis added).
[2] "Regulation E, issued by the Board of Governors of the Federal Reserve System, implemented the EFTA and provided additional details" in 12 C.F.R. § 205.16 (2001), which combined with the EFTA, resulted in the requirement of both an on-screen notice and an external notice.
[3] In their summary judgment motion, Wal-Mart also asserted the "unintentional error defense," claiming that the notices were missing due to unintentional error. 15 U.S.C. § 1693m(c).

of its motion. Collectively, this evidence would establish that the three MCX machines in question were originally equipped with the external fee notices and that Wal-Mart employees did not remove the notices. The ATM Users moved to strike Lam's declaration and depositions for having been made in the absence of personal knowledge and argued that the purported business records were hearsay and were not properly authenticated. The district court denied the ATM Users' motion to strike, but indicated it would consider the ATM Users' arguments in resolving the summary judgment motion.

### b. The Cash Depot ATM Users

Along a nearly identical narrative, Cash Depot provides financial services through ownership and operation of ATMs. Cash Depot leases space from Wal-Mart and Sam's Club stores to provide its ATMs at those locations. Three individual ATM Users alleged that they each used Cash Depot ATMs that lacked external fee notices at that time. Cash Depot imposed a $1.75 ATM fee on customers who withdrew cash. Notably, Cash Depot regularly engages subcontractors, including a company called Diebold, to service Cash Depot's ATMs.

Cash Depot moved for summary judgment and argued it was entitled to the safe harbor defense. In support of its motion, Cash Depot submitted a declaration of Rocky Heiser, the Operations Manager of Cash Depot. Cash Depot also attached a number of purported business records to Heiser's declaration, and such records are crucial to establishing Cash Depot's defense. The records show that the ATMs in question were originally affixed with external fee notices and that Cash Depot employees were never directed to remove the stickers. Cash Depot also submitted Heiser's deposition in support of its position. The ATM Users moved to strike Cash Depot's summary judgment evidence because they argued that Heiser lacked personal knowledge to make certain statements in his declaration and deposition and because the

purported business records were hearsay and were not properly authenticated. The district court denied the ATM Users' motion to strike, but indicated it would consider the ATM Users' arguments in its summary judgment order.

### c. Summary Judgment

The district court ultimately granted summary judgment in favor of Wal-Mart and Cash Depot and concluded that: (1) the records fell within the business records exception of Fed. R. Evid. 803(6); (2) Lam and Heiser qualified as "other required witnesses" to authenticate the business records; (3) Lam and Heiser testified with personal knowledge by virtue of their positions in the defendant companies; and (4) Wal-Mart and Cash Depot established the safe harbor defense based on the business records and Lam's and Heiser's declarations and depositions, particularly since the ATM Users failed to point to any material facts to negate such evidence.

The ATM Users now appeal and argue that the district court erred by: (1) considering the records produced by Wal-Mart and Cash Depot as business records without proper authentication; (2) relying on Lam's and Heiser's declarations and depositions that were not based on personal knowledge; (3) granting summary judgment in favor of the defendants based on the safe harbor defense in the absence of evidence affirmatively proving vandalism of the ATMs in question; (4) purportedly drawing inferences in favor of the defendants on summary judgment; and (5) allowing the defendants to assert both the safe harbor defense and the "bona fide error" defense.

### II.

We review the district court's evidentiary rulings for an abuse of discretion and will reverse only if the district court relied on clearly erroneous findings of fact, improperly applied

the law, or employed an erroneous legal standard. *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012).[4] We review the district court's grant of summary judgment *de novo*. *Eastham v. Chesapeake Appalachia, LLC*, 754 F.3d 356, 360 (6th Cir. 2014).

## III.

Today is a lesson that the Rules of Evidence must be followed, even—and perhaps especially—when the rule encompasses a historically low standard.

### i. Business Records of Wal-Mart and Cash Depot

The ATM Users maintain that certain documents attached to Lam's and Heiser's declarations—which show that the ATMs at issue each originally was equipped with the proper notice and were later maintained—were inadmissible hearsay. They argue that, under Fed. R. Civ. P. 56(c)(2), the defendants should not have relied on those documents. In response, Wal-Mart and Cash Depot maintain that the documents were self-authenticating business records, which were admissible in accordance with Fed. R. Evid. 803(6).

To be admissible under Fed. R. Evid. 803(6), a record must meet the following four requirements:

> (1) it must have been made in the course of a regularly conducted business activity; (2) it must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009). "This information must be presented through 'the testimony of the custodian or other qualified witness[.]'" *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (quoting Fed. R. Evid. 803(6)). We have also held:

---

[4] The parties only refer to the *de novo* standard of review applied to our review of a grant of summary judgment but do not address the evidentiary considerations under a separate standard of review.

> Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record. The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but *need only be familiar with the company's recordkeeping practices* . . . . [I]t is not necessary that the [custodian] have personal knowledge of their preparation.

*Id.* (emphasis added) (internal quotation marks and citations omitted).

The ATM Users maintain that the records do not satisfy any of the requirements under the business records exception. In determining whether the records attached to Lam's and Heiser's declarations were business records, the district court properly cited our precedent, requiring that a custodian or other qualified witness authenticate business records by establishing four requirements of admissibility under Rule 803(6). However, the district court did not provide any explanation as to how the records satisfied these requirements through the declarations, or even the depositions, of Lam and Heiser. In so doing, the district court misapplied the law to the facts of this case.

In their declarations, Lam and Heiser submitted an identical statement that their declarations were based, in part, on the attached "business records made at or near the time of recorded events and regularly maintained in the ordinary course of [each individual defendant's] business." At best, this conclusory statement lays the foundation for the first two requirements under Rule 803(6). Put differently, a liberal reading of such statements establishes that the records were: (1) "made . . . in the ordinary course of" a regularly conducted business activity; and (2) were kept, i.e., "maintained in the ordinary course of" Wal-Mart's and Cash Depot's business. *See United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998) (noting the requirements to qualify as a business record).

However, nowhere in either declaration do Lam and Heiser refer to the final two requirements under the business records exception. For example, in his declaration Lam states: "attached hereto as collective Exhibit D are true and correct copies of Remedy Updates received from NCR for the three (3) Wal-Mart MCX machines showing that the 'on -machine' fee notices were affixed to the machine at the time of installation." This piece of evidence is crucial to Wal-Mart's safe harbor defense. Neither Lam's declaration nor his deposition indicates whether the regular practice of Wal-Mart was to ask for and/or receive and rely upon NCR's documents in the ordinary course of business, or whether NCR simply sent the records to Wal-Mart at the onset of this litigation. Lam also never testified that the memorandum was made by someone at NCR with knowledge of the transaction or from information transmitted by a person with knowledge. Lam stated in his declaration: "attached hereto as Exhibit E is a true and correct copy from the files of Wal-Mart of a April 10, 2009 memorandum provided to Wal-Mart stores regarding the placement of the new, updated fee onto the older Wal-Mart machines." Yet, was it in Wal-Mart's regular practice to make such a memorandum? Was the memorandum made by a person with knowledge of the transactions or from information transmitted by a person with knowledge? Although we have little doubt that Exhibit E might satisfy the requirements under the business records exception, such requirements must be "shown by the testimony of the custodian or another qualified witness . . . ." Fed. R. Evid. 803(6)(D). If Rule 803(6) means anything, it must mean that the custodian or "other qualified witness" at least attests to the business records requirements. Lam need not use magic words to establish the requirements under the business records exception, but he must at least convey that he has a baseline level of knowledge that the records meet the admissibility requirements.

Even Lam's deposition testimony fails to establish all the requirements to authenticate the documents attached to Lam's declaration. For example, Lam stated in his deposition that National Cash Register notifies him once the notice is put on the ATM and even agreed that NCR takes a photograph and sends it to him. But even this statement is unconnected to any particular exhibit or group of exhibits and fails to state that such photos were made by NCR employees with personal knowledge of the ATMs in question. Moreover, the statement does not reflect that Wal-Mart received and kept such records in the ordinary course of its business.

Similarly, Heiser's declaration does not establish the requirements to authenticate the attached documents under the business records exception to the hearsay rule. For example, Heiser states: "Cash Depot has photographs of the Savannah, TN ATM with an 'on-machine' ATM fee notice affixed to it that were taken before November 21, 2005 . . . ." However, was this Cash Depot's regular practice? Was the photo taken by a Cash Depot employee with personal knowledge, or perhaps by one of Cash Depot's subcontractors? While any number of brief statements could have authenticated such documents, Heiser simply did not make them. His deposition is closer to authenticating the records. He testified that Cash Depot is notified by the subcontractor who did the installation that the stickers were on the machines. Again, Heiser did not even specify which subcontractor it used, or how Cash Depot is notified. Are regular reports sent by an individual with knowledge? Or were these records sent from the subcontractor after the onset of litigation?

The defendants state in their brief:

For Lam, with respect to each of the 10 exhibits attached to his Declaration, he clearly identified each document and the document's purpose. Each of the documents was created by Wal-Mart or at Wal-Mart's request by agents Wal-Mart engaged to perform work related to Wal-Mart's MCX machines, and each document was maintained in Wal-Mart's business files.

The defendants similarly avow:

> For Heiser, with respect to each of the six exhibits attached to his Declaration he also plainly identified each document and the document's purpose. Each of the documents was created by Cash Depot or at Cash Depot's request by subcontractors Cash Depot engaged to perform work related to its ATMs, and each was maintained in Cash Depot's business files.

Notably, the defendants do not cite the record. Nor do they indicate that *Lam or Heiser testified or declared* that "[e]ach of the documents were created by Wal-Mart [or Cash Depot] or at Wal-Mart's [or Cash Depot's] request by agents Wal-Mart [or Cash Depot] engaged . . . and each document was maintained in Wal-Mart's [or Cash Depot's] business files." This is likely because we have been unable to locate anywhere in the record that *Lam or Heiser made such statements*. Through these statements, Wal-Mart and Cash Depot attempt to authenticate records on appeal that should have been authenticated by Lam and Heiser in their declarations submitted to the district court.

Even assuming that loosely patching Lam's and Heiser's declarations and depositions together could lay a sufficient foundation to authenticate the records, the defendants fail to cite to any specific portion of the record for us to conclude that Lam and Heiser could be deemed "other qualified witnesses" under Rule 803(6). Although the standard to be an "other qualified witness" is low, the defendants have failed to point to any evidence in the record to indicate that Lam and Heiser had any knowledge about the recordkeeping practices of Wal-Mart and Cash Depot, respectively.

Rule 803(6) does not require Lam and Heiser to have personal knowledge of the records to qualify as "other qualified witnesses," but they must at least be familiar with the company's recordkeeping practices. *Jenkins*, 345 F.3d at 936. The defendants maintain that Lam and Heiser had personal knowledge regarding Wal-Mart's and Cash Depot's business activities

solely on the basis that they were upper-level management, and "[i]t naturally follows that they also had personal knowledge sufficient to enable them to testify regarding the business documents generated and maintained in the course of those activities and to establish the admissibility of such documents."

There was thus no basis for the district court to conclude that: "Heiser and Lam's positions and responsibilities include the requirement that they be familiar with the record-keeping practices of the respective Defendants," such that they fall under the "other qualified persons" portion of Rule 803(6) of the Federal Rules of Evidence. Lam and Heiser never aver that they are generally knowledgeable, informed, or involved in Wal-Mart or Cash Depot record-keeping.

Just because Heiser and Lam are members of upper level management does not automatically qualify them to be remotely knowledgeable about the record keeping practices of Wal-Mart and Cash Depot, respectively. We have held that a person outside the organization, whose records were at issue, could lay the foundation to admit business records under Rule 803(6) because "all that is required is that the witness be familiar with the record keeping system." *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986). We likewise decline to admit business records under Rule 803(6) based on declarations of upper management employees who never claim to be a "witness . . . familiar with the record keeping system." *See id.* Lam and Heiser never hinted at the record-keeping system of Wal-Mart or Cash Depot, except to say that some of the exhibits were taken from company records. Statements by Lam and Heiser, such as "attached hereto as collective Exhibit H are true and correct copies *from the files of Wal-Mart*" (Emphasis added) and "[t]rue and correct copies of these photographs *from*

*the files of Cash Depot* are attached hereto as Exhibit D" (Emphasis added), do not establish familiarity with the record-keeping system.

Finally, Wal-Mart and Cash Depot could logically incorporate documents prepared by third-party subcontractors, such as NIC, into their business records. Courts have generally agreed that "Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document . . . [and] would allow an incorporated document to be admitted based upon the foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document." *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999) (collecting cases). Courts have also stressed that the documents should have "other assurances of reliability." *Id.* However, Wal-Mart and Cash Depot can incorporate documents prepared by third-party subcontractors into their business records, only *through foundation testimony of the record keeping practices that establish such incorporation and reliance. See id.* The record does not indicate that Wal-Mart and Cash Depot regularly kept and relied upon records form third-party businesses or that Lam or Heiser had any knowledge about how such record keeping was done.

### ii. Declarations and Depositions of Lam and Heiser

The ATM Users argue that, under Fed. R. Civ. P. 56(c)(4), Lam and Heiser's declarations were not made with personal knowledge and, therefore, the district court erred by overruling the ATM Users' objection to the defendants' reliance on such declarations. While certain statements made in Lam's and Heiser's depositions were likely made with personal knowledge, the vast majority of their testimony crucial to the safe harbor defense was made based on Lam's and

Heiser's review of the purported business records. Furthermore, the district court agreed that the "Declarations alone fail to provide a basis for personal knowledge for Lam and Heiser."

The defendants argue that Lam's and Heiser's deposition testimony was based on personal knowledge because: (1) an employee's knowledge can be based upon a review of a company's business records; and (2) through their status as upper level management, Lam and Heiser could establish personal knowledge of the organization's operations. The defendants also argue that Lam and Heiser's experience with ATM and MCX machines provide evidence of personal knowledge. We agree that portions of Lam's and Heiser's depositions reflect general knowledge about day-to-day operations of their jobs and knowledge about ATM policies and procedures. Accordingly, such evidence is admissible.

However, the evidence relating specifically to whether the particular ATMs in question were equipped with the exterior notice requirements was not based on Lam's and Heiser's personal knowledge, but rather Lam's and Heiser's review of the unauthenticated business records. As already indicated, the purported business records were not properly authenticated, and thus, testimony based upon them was not admissible.

Relying on *Otterbein College v. Cont'l Ins. Co.*, No. 2:08-cv-1048, 2010 WL 2196450, at *1 (S.D. Ohio June 1, 2010), the defendants next argue that "[p]ersonal knowledge of an organization's operations can be inferred from an affiant's position with a company or other organization." However, this argument derives from precedent that pre-dates the 2010 revisions to the Federal Rules of Civil Procedure and is limited to testimony by corporate officers. In a 1996 unpublished case, we held: "[c]orporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment." *AGI Realty Serv. Grp., Inc. v. Red Robin Intern., Inc.*, 81 F.3d 160 (6th Cir. 1996)

(unpublished).  In *AGI*, we cited *Catawba Indian Tribe of South Carolina v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992), which held that "ordinarily, officers would have personal knowledge of the acts of their corporations" sufficient to satisfy the personal knowledge requirement in Fed. R. Civ. P. 56.  *AGI* and *Catawba* were based on "Rule 56(c)(4)'s predecessor, Rule 56(e)."  *See El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, n.1 (6th Cir. 2013).  Since the "personal knowledge" requirement was simply moved from Rule 56(e) to Rule 56(c)(4), the holdings of *AGI* and *Catawba* are relevant.

However, Lam and Heiser have conceded that they are not corporate officers.  Instead, they argue that the general principle from *AGI* and *Catawba* should apply to them because the reasoning of the rule applies "equally to them as employees testifying about matters within their 'sphere of responsibility.'"  There is no precedent to support extending such a rule to persons who are not corporate officers.  The cases cited by the defendants refer to testimony of corporate officers, not general managerial positions.  *See Catawba*, 978 F.2d at 1342 (applying the rule to "corporate officers on behalf of the corporation"); *AGI*, 81 F.3d 160 (applying the rule to a vice-president of the corporation); *WYCQ, Inc. v. Nat'l Music Mktg.*, No: 3:05-cv-0979, 2008 WL 56027, at *4 (M.D. Tenn. Jan. 3, 2008) (applying the rule to the president of a company).

In sum, the district court could not find that Lam and Heiser had personal knowledge to testify based on the review of unauthenticated business records and solely by virtue of their positions in the corporation.

The judgment of the district court is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.