(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.
Fed. R. Evid. 803(6). "The business records exception is based on the indicia of reliability that attaches to a record created or maintained by an employer in the ordinary or regular course of their business." Cobbins v. Tenn. Dep't of Transp. , 566 F.3d 582, 588 (6th Cir. 2009). If a party can establish a foundation showing that the evidence satisfies the requirements of the Business Records Exception under Rule 803(6), the authentication requirements of Rule 901 are also met and no additional foundation is necessary.[9] Imhoff Inv., LLC v. SamMichaels, Inc. , 2014 U.S. Dist. LEXIS 4965, at *23, 2014 WL 172234, at *8 (E.D. Mich. Jan. 15, 2014).
The advisory committee's note to Rule 803(6) describes a broad range of records that may be admissible under the Business Records Exception extending to data retained electronically on a computer:
The form which the "record" may assume under the rule is described broadly as a "memorandum, report, record, or data compilation, in any form." The expression "data compilation" is used as broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form. It includes, but is by no means limited to, electronic computer storage. The term is borrowed from revised Rule 34(a) of the Rules of Civil Procedure.
Fed. R. Evid. 803 (advisory committee's note to Paragraph (6) ). See also United States v. Nixon , 694 F.3d 623, 634 (6th Cir. 2012). However, "[n]ot every document or item of business correspondence contained in a file constitutes a business record." Fifth Third Bancorp , 2008 WL 11351544, at *3 (citing United States v. Gwathney , 465 F.3d 1133, 1141 (10th Cir. 2006) ). "[T]he mere presence of a document in the retained files of a business entity does not by itself qualify the document as a business record." Id. In order for a document to be admissible as a business record, the party proffering the record must first satisfy the test set forth in Rule 803(6). Id.
In the Sixth Circuit, the test to qualify a record for the Business Record Exception under Rule 803(6) requires the proponent of the evidence to demonstrate that:
*658 (1) [the record] must have been made in the course of a regularly conducted business activity; (2) [the record] must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the [record]; and (4) the [record] must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.
Fambrough v. Wal-Mart Stores, Inc. , 611 F. App'x 322, 326 (6th Cir. 2015) (citing Cobbins , 566 F.3d at 588 ). Furthermore, and critical to this case, this foundation for admissibility must be laid through the testimony of a custodian or a qualifying witness. Fed. R. Evid. 803(6)(D).[10]
In the case at hand, the Plaintiff presents two possible witnesses to lay the foundation for the admissibility of the Plaintiff's proffered Business Records: Mr. Pleiman, the investigator hired by Fujitec, and Mr. Okuda, Fujitec's President. As neither of these witnesses were presented as a custodian of the records, the question presented to this Court is whether the witnesses properly laid the foundation as "other qualified witnesses" under Rule 803(6)(D).
The standard in the Sixth Circuit for knowledge required to lay the foundation by a qualified witness is very liberal. Fambrough , 611 F. App'x at 328 ; United States v. Skeddle , 981 F.Supp. 1069, 1072 (N.D. Ohio 1997). The witness is not required to have personal knowledge of the creation of the record in order to lay a proper foundation for the record's admissibility. Fambrough , 611 F. App'x at 326 ; Skeddle , 981 F.Supp. at 1072 (noting that a lack of personal knowledge goes to the credibility that should be afforded that witness's testimony rather than the admissibility of the record itself). Instead, " 'all that is required is that the witness be familiar with the record keeping system' " of the business. Skeddle , 981 F.Supp. at 1072 (further citation omitted). See also Fambrough , 611 F. App'x at 326. As such, a proper foundation may be laid, in part or in whole, by the testimony of a government agent, investigator, or other person outside the organization whose records are sought to be admitted so long as the witness used to lay the foundation is familiar with the organization's record keeping system. United States v. Hathaway , 798 F.2d 902, 906 (6th Cir. 1986). In this case, neither of the Plaintiff's witnesses were able to lay the proper foundation for admission of the Business Records.
a. Business Records Created by Fujitec
Many of the records in the Plaintiff's exhibits were purportedly created by *659 Fujitec, such as Fujitec checks, emails, and expense reports [Pl. Exs. 2-7]. To properly lay the foundation, Mr. Pleiman would have to show a familiarity with Fujitec's record keeping practices. Instead, Mr. Pleiman never testified to such a familiarity. When asked by the Debtor what Mr. Pleiman did to authenticate the records received from Fujitec, Mr. Pleiman replied that he assumed the documents he received were authentic and accurate because they were approved by members of Fujitec management including, Ray Gibson, the current Chief Financial Officer of Fujitec, and Melissa Busch, Fujitec's Controller.[11] Neither Mr. Gibson nor Ms. Busch were called by the Plaintiff to testify at the trial. In addition to failing to demonstrate a familiarity with Fujitec's record keeping, Mr. Pleiman did not testify to the other requirements of Rule 803(6) that would demonstrate that the records were made and kept in the course of Fujitec's regularly conducted activities. See Fambrough , 611 F. App'x at 327 (noting that "[i]f Rule 803(6) means anything, it must mean that the custodian or 'other qualified witness' at least attests to the business records requirements"); Northern Plains Feeders, Inc. v. Badami (In re AFY) , 482 B.R. 830, 844 (D. Neb. 2012) (noting that the custodian or other qualified witness does not need to have personal knowledge regarding the creation of the document but does need to be able to testify to the foundational requirements of Rule 803(6)(A)-(C), including knowledge that the record was kept and made in the course of regularly conducted activity). As such, these documents are not admissible through Mr. Pleiman.
Mr. Okuda, Fujitec's President, also testified at the trial. Like Mr. Pleiman, Mr. Okuda could be the qualifying witness to lay the foundation for the admissibility of the Business Records created by Fujitec if he testified to a familiarity with Fujitec's record keeping system, although his position as President, alone, is not sufficient to establish that familiarity. Fambrough , 611 F. App'x at 328 (being a member of upper level management does not automatically qualify a witness to be knowledgeable about the record keeping practices of the business). While Mr. Okuda testified that Fujitec turned over checks and other business records to Mr. Pleiman as part of the investigation of the Debtor, he conceded that he was not personally involved in the investigation. Mr. Okuda further answered yes to a general question about expense reports being business records maintained by Fujitec, but mostly seemed uncertain about the questions being asked. Mr. Okuda's testimony is insufficient to establish that he had an understanding of Fujitec's record keeping system or the other requirements of Rule 803(6)(A)-(C) that would demonstrate, among other things, that the Fujitec generated records were made and kept in the course of Fujitec's regularly conducted activities. As such, these documents are not admissible through Mr. Okuda.
b. Business Records Created by Third Parties
Other documents in Plaintiff's Exhibits 2-7 were not generated by Fujitec, including Huntington National Bank statements and business signature cards, U.S. Bank *660 statements, Fifth Third Bank credit card statements, and invoices and receipts from various vendors [Pl. Exs. 2-7]. Mr. Pleiman indicated that these records, except for some bank statements received from a prosecutor, were also provided by Fujitec.
The fact that Fujitec did not create the records does not necessarily prevent them from being admitted under Rule 803(6)'s Business Records Exception. " 'Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document[.]' " Fambrough , 611 F. App'x at 329 (citing Air Land Forwarders, Inc. v. United States , 172 F.3d 1338, 1343 (Fed. Cir. 1999) ); Stratton v. Portfolio Recovery Assocs., LLC. , 171 F.Supp.3d 585, 590 (E.D. Ky. 2016), aff'd , 706 F. App'x 840 (6th Cir. 2017). Instead, Rule 803(6)" 'would allow an incorporated document to be admitted based upon the foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document.' " Fambrough , 611 F. App'x at 329 (citing Air Land Forwarders , 172 F.3d at 1343 ). However, such third-party generated documents may constitute admissible business records "only through foundation testimony of the record keeping practices that establish such incorporation and reliance." Id. (emphasis omitted).
In this case, neither Mr. Pleiman nor Mr. Okuda testified to a familiarity with the record keeping system of the incorporating business, Fujitec. Furthermore, neither witness testified to how Fujitec kept and relied upon the records from third-party businesses and banks in the ordinary course of Fujitec's business. To the extent the bank statements within the exhibits were not kept by Fujitec but, instead, were provided to Mr. Pleiman by a prosecutor, Mr. Pleiman never specifically identified which bank statement fell into that category nor did he establish that he is a custodian or other qualifying witness as to any bank statements provided by a prosecutor. As such, these third-party generated business records are not admissible under the Business Records Exception through the testimony of Mr. Pleiman or Mr. Okuda. Because no other exception was articulated for admissibility of the Business Records, this Court concludes that they are inadmissible.
2. Computer Records
Sprinkled among the Plaintiff's exhibits were various documents that Mr. Pleiman alleged to be created by the Debtor on the computer he used while working at Fujitec. Those documents include letters and invoices of allegedly fictitious law firms, emails under the name of a lawyer from one of the law firms, and doctored hotel invoices (the "Computer Records") [See, e.g. , Pl. Exs. 2, pp. 13-16, p. 45-46, Ex. 7]. Like the Business Records, the Computer Records were not organized or specifically identified by source during Mr. Pleiman's testimony making it difficult to sort out which emails, letters, and receipts the Plaintiff alleges to have recovered from Debtor's work computer as part of the investigation. The Debtor objected to the admissibility of the Computer Records citing a lack of foundation for their authenticity and reliability.
To the extent that the Plaintiff is relying on the Computer Records to establish the amount of any alleged damages, this Court agrees that the Plaintiff failed to establish that the Computer Records meet the qualifications for the Business Records Exception under Rule 803(6) or are otherwise admissible under another evidentiary *661 rule.[12] Neither Mr. Pleiman nor Mr. Okuda established that they were familiar with Fujitec's record keeping system or that they knew how the Computer Records were kept and maintained in the regular course of Fujitec's business activities. See Health All. Network, Inc. v. Cont'l Cas. Co., CNA , 245 F.R.D. 121, 129 (S.D.N.Y. 2007), aff'd , 294 F. App'x 680 (2d Cir. 2008) (data printed from a company's computer database may be subject to the business records exception to the hearsay rule when there are sufficient indicia of reliability of the data produced and the underlying database is maintained through the ordinary course of business).
Even if these predicates to admissibility had been demonstrated, Rule 803(6)(E) allows otherwise admissible records to be excluded if the circumstances of their preparation indicate a lack of trustworthiness. Fed. R. Evid. 803(6)(E). See also Fifth Third Bancorp , 2008 WL 11351544, at *5 (noting that "[t]his is so because the hallmark of documents admitted under the business records exception is that they are trustworthy and reliable."). In determining whether the documents are trustworthy and reliable, "courts are to consider the character of the records and their earmarks of reliability ... from their source and origin and the nature of their compilation[.]" Fifth Third Bancorp , 2008 WL 11351544, at *5
This Court finds an additional layer of unreliability surrounds the Computer Records that the Plaintiff proffers. Neither Mr. Pleiman nor Mr. Okuda testified to how the Computer Records were stored, found, and collected to ensure that they were, in fact, recovered from a secure computer database used by the Debtor at Fujitec and to the exclusion of other employees.[13] See, e.g. , Nixon, 694 F.3d at 634-35 ; Health All. , 245 F.R.D. at 129 (allowing admission of computer generated documents through testimony of a custodian who knew through her investigation the type of data collected, how it was inputted and maintained, where it was maintained, and how the data in question was queried and collected for purposes of litigation); American Express Travel Related Services Co., Inc. v. Vee Vinhnee (In re Vee Vinhnee) , 336 B.R. 437, 445 (9th Cir. BAP 2005) (authenticating a document stored on a computer may pose additional requirements to assure that the record is what it purports to be with important questions including what is the company's policies and procedures for use of the equipment, how is access to the pertinent database controlled and what are the audit procedures for assuring the continuing integrity of the database). This Court concludes that the Plaintiff did not lay an adequate foundation for the admission of the Computer Records under Rule 803(6) or otherwise assure this Court that the Computer Records were, in fact, retained in and retrieved from a secure computer used by the Debtor.
3. Summary Evidence
In addition to the Business Records and Computer Records proffered by the Plaintiff, the Plaintiff proffered summaries within Plaintiff's Exhibits 6 and 7, which this Court labels the Summary Evidence. In the first few pages of Exhibit 6, RSM
*662 created a summary of credit card expenses from the Debtor's alleged use of a Fujitec-issued credit card purporting to show its use by the Debtor for personal expenses. The front two pages of Exhibit 7 are another RSM prepared summary of the Debtor's expenses, including airfare, purportedly submitted to Fujitec for reimbursement. The summary was based on vendor receipts and expense reports also included in the exhibit.
Summary Evidence, like that prepared by RSM, may be admissible under Rule 1006, which provides:
The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.
Fed. R. Evid. 1006. "The Sixth Circuit imposes five requirements for the admission of summary evidence: (1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation." Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc. , 2012 U.S. Dist. LEXIS 156872, at *14, 2012 WL 5363553, at *4 (E.D. Mich. Oct. 30, 2012) (citing United States v. Moon, 513 F.3d 527, 545 (6th Cir. 2008) ).
Significantly, the underlying documents must be admissible into evidence. Consequently, if the underlying documents from which the summary is created are business records, the business records must be admissible under the Business Records Exception requiring, among other things, that a qualifying witness attest to the record keeping practices of the business. Sol Bergman , 225 B.R. at 900-01 (noting that the foundation for admissibility obtained from an authenticating witness proffering either a business record or a summary based thereon, or secondary evidence thereto, requires that the witness be familiar with the company's record keeping practices).
In this case, the underlying documents on which the summaries were based included Fifth Third credit card statements, Fujitec expense reports and various third-party receipts and invoices, which this Court has already determined were inadmissible under the Business Records Exception of Rule 803(6) because no foundation was laid by a qualifying witness familiar with Fujitec's record keeping system. Accordingly, this Court concludes that Plaintiff's Summary Evidence based on the inadmissible Business Records is, likewise, inadmissible.
4. Admitted and Excluded Evidence
For the foregoing reasons, Plaintiff's Exhibits 2 through 7 are not admitted into evidence. There were no objections to Plaintiff's Exhibit 1 (documents relating to the Debtor's guilty plea in the Warren County Court of Common Pleas) and Plaintiff's Exhibit 8 (documents relating to the Release). Therefore, Plaintiff's Exhibits 1 and 8 are admitted into evidence.
B. Plaintiff's Remaining Evidence is Insufficient to Demonstrate a Debt
With most of the Plaintiff's documentary evidence excluded, this Court is now *663 tasked with determining whether the Plaintiff carries the burden of establishing a debt on its remaining evidence. This Court begins with an assessment of the proper weight to give the testimony of the Plaintiff's key witness, Mr. Pleiman, before reviewing the testimony of Mr. Okuda and the Debtor.
1. Mr. Pleiman's Testimony
The Plaintiff listed Mr. Pleiman as an expert witness on the Plaintiff's Witness List [Docket Number 46], but also presented Mr. Pleiman as a fact witness at trial. The Debtor objected to Mr. Pleiman's testimony because he had no personal knowledge of the facts and, instead, relied on inadmissible documentary evidence to come to his conclusions as the amount of damages.
Ultimately, Mr. Pleiman was the only witness called by the Plaintiff to establish the facts giving rise to the Debtor's alleged liability to Fujitec.[14] Mr. Pleiman may seem a surprising choice to establish the facts because he is an outside investigator with no first-hand knowledge of the events that occurred while the Debtor was employed at the company. Nonetheless, such an investigative witness may offer testimony stemming from both his personal knowledge of matters in the investigation and his specialized knowledge as an expert if properly qualified for both roles. Nixon , 694 F.3d at 629.
As a lay witness, Mr. Pleiman is permitted to testify to matters of which he has personal knowledge. Fed. R. Evid. 602. Mr. Pleiman's knowledge of the facts, however, is limited to what was discerned through the documents he received from Fujitec and a prosecutor, records that this Court has deemed inadmissible. Because Mr. Pleiman has no personal knowledge of the events that occurred beyond his review of these inadmissible hearsay documents, Mr. Pleiman's fact testimony is also deemed inadmissible hearsay.
Nonetheless, Mr. Pleiman may still testify as an expert to the extent he meets the requirements of Rule 702 which provides:
A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702. Once the expert's opinion testimony meets these qualifications, the opinion is not "automatically" objectionable just because it embraces an ultimate issue to be decided by the trier of fact. Fed. R. Evid. 704.
This Court concluded during the trial that Mr. Pleiman was qualified as an expert witness based on his training and experience. Mr. Pleiman testified that he has been a certified public accountant for *664 eighteen years, a partner at RSM for eleven years and has served on or been a member of various accounting boards and societies. He testified to conducting at least five or six other forensic accounting investigations of employee activities. The Debtor did not oppose Mr. Pleiman's qualification as an expert witness.
Turning to the reliability of Mr. Pleiman's expert testimony and its efficacy in assisting this Court as the trier of fact, this Court notes that an expert may rely on inadmissible hearsay evidence in arriving at an opinion so long as the evidence is the type reasonably relied upon by experts in the field. Fed. R. Evid. 703 ; see also Collins v. Prime Table Restaurant & Lounge, Inc. (In re Lake States Commodities, Inc.) , 271 B.R. 575, 585 (Bankr. N.D. Ill. 2002), aff'd , 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002). The expert, however, cannot certify the truth of the evidence on which he relied. Lake States Commodities , 271 B.R. at 585. "Moreover, the inadmissible evidence is not somehow transmogrified into admissible evidence simply because an expert relies on it." Id. "Rather, the hearsay is admitted solely to explain the basis of the expert's opinion, not as proof of the underlying matter." Id.
That an expert's opinion is admissible even when based on inadmissible hearsay, "does not equate with its utility in satisfying a burden of proof." Id. "The fact finder must still consider the credibility of the expert and determine the weight to be accorded to his or her testimony and report." Id.
"When there is a dearth of other fact evidence in the record, some courts give the expert testimony or report little or no evidentiary weight." Id. at 586. For example, in the case of Beckman v. Von Christierson (In re CSI Enter., Inc.) , 220 B.R. 687 (Bankr. D. Colo. 1998), aff'd , 203 F.3d 834 (10th Cir. 2000), the court gave little weight to an expert's testimony where there was no evidence before the court to validate the information relied upon by the expert in preparing his report. Id. at 698. In Beckman , the plaintiff's valuation expert, Stegenga, prepared a report based on financial statements and other information that the expert deemed reliable but were not in the record. Id. at 692-93, 697. In ultimately granting judgment to the defendant, the court stated that:
[W]hile it is appropriate for an expert to testify and formulate his opinion based on hearsay evidence, in this case the Court is being asked to accept Stegenga's hearsay testimony and his value judgment as evidence of the ultimate fact and in lieu of any proof of the actual indebtedness owed by Benton to NTC. On the other hand, Stegenga has testified that he started from Benton's Financial Statement because he believed that it was probably accurate. There is no reason whatsoever for the Court to accept Stegenga's evaluation as to the amount of the debt. Clearly, it is not an opinion formulated by him after an audit or any search for the truth of the actual amount of the indebtedness. An expert's testimony cannot be used to subvert the rules of evidence.
Id. at 697. See also In re James Wilson Assocs. , 965 F.2d 160, 172-73 (7th Cir. 1992) (while an expert witness normally is allowed to explain the facts underlying his opinion, even if not independently admissible, "... the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence .... The fact that inadmissible evidence is the (permissible) premise of the expert's opinion does not make that evidence admissible for other purposes ....").
Likewise, in Lake State Commodities , the court was called on to determine *665 whether a debtor company, while insolvent, made fraudulent transfers to certain investors as part of a Ponzi scheme. 271 B.R. 575. To sustain his burden of proof, the chapter 7 trustee attempted to introduce a summary report of the debtor's business records, a summary report of investor activity and certain business records of the debtor through the trustee's own testimony. Id. at 579-80. The court sustained the defendant-investors' evidentiary objections and excluded the evidence for failure to lay a proper foundation for admissibility and because the trustee lacked personal knowledge of the matters. Id. That left the trustee's expert, Malek, and Malek's expert report, as the only evidence to prove the factual requirements of the trustee's case. Id. at 585-86. While recognizing that expert testimony may embrace an ultimate issue to be decided pursuant to Fed. R. Evid. 704, the court found it "unusual," although not categorically unheard of, that the only evidence in the case to meet the trustee's burden of proof was expert evidence.[15] Id. (noting that an expert is usually called upon to summarize and render an opinion as to the facts derived from direct testimony and business records in evidence). The court further noted that Malek did not interview employees of the debtor, test the information on which he relied, or validate his sources. Id. at 587. Instead, Malek relied on what the trustee told him and the summary report of the debtor's business records that was excluded from evidence. Id. Without the underlying facts in evidence and without meaningful testing or validation of the underlying sources, the court concluded that the Malek report was entitled to no weight and, ultimately, entered judgment in favor of the defendant-investors. Id. at 587-88.
In the case at hand, Mr. Pleiman opined that the Debtor orchestrated three alleged schemes to convert funds from Fujitec in the total amount of $196,681.74. While his opinion is admissible, it is of questionable efficacy to this Court as the trier of fact. As in Lake State Commodities, none of the business records that might support Mr. Pleiman's opinion were admitted into evidence. Furthermore, Mr. Pleiman testified that he took no measures to independently verify the accuracy of the records he received from Fujitec and the prosecutor nor did he interview the Debtor or other Fujitec employees as part of the investigation. Instead, Mr. Pleiman testified that he assumed that the documents received from Fujitec were authentic and accurate because they were approved by members of Fujitec management, none of whom testified at trial.[16]
Mr. Pleiman's conclusions are belied by further assumptions he made during the investigation. Mr. Pleiman concluded that the Debtor converted $29,170.74 from Fujitec through his alleged use of a Fujitec credit card for personal expenses but, on cross-examination, admitted that these cards were issued in the employees' names and paid directly by the employees. Mr. Pleiman conceded that he was unaware of any prohibition against Fujitec employees *666 using the credit cards for personal expenses nor did he check other employee credit cards to see if they included personal expenses. Mr. Pleiman made further assumptions about the type of expenses that seemed personal without verifying whether specific expenses for a show or dinner may have had a business purpose such as entertaining colleagues. With respect to his conclusion that the Debtor converted an additional $17,386 through "padded" expenses submitted to Fujitec for reimbursement, Mr. Pleiman admitted that he assumed that a business expense was manufactured by the Debtor if he submitted a receipt for it but the expense did not appear on the Fujitec issued credit card. Mr. Pleiman conceded on cross examination that if a business expense was paid for in some manner other than with the company credit card he would not know.
Further exacerbating the shortcomings of his opinions is the fact that Mr. Pleiman did not file an expert report. As such, this Court is left with no verification of Mr. Pleiman's methods or calculations. For example, Mr. Pleiman concluded that the Debtor converted $150,125 by funneling funds through three law firms under the guise of settling fictitious claims but he did not provide any summary calculation of transactions needed to reach this amount.[17] The need for verification is further underscored by the fact that Mr. Pleiman's conclusion of the amount converted through the three separate schemes, $196,681.74, does not match the $185,686.33 in damages that Plaintiff counsel quoted in his opening statement.
Based on the questionable assumptions and the inability of this Court to verify his calculations, this Court finds Mr. Pleiman's expert testimony unreliable. In addition, giving weight to Mr. Pleiman's conclusions on the ultimate issue of damages without admissible evidence to support his conclusions would subvert the rules of evidence. Accordingly, Mr. Pleiman's expert opinions, while admissible, are given no weight by this Court.
2. Mr. Okuda's Testimony and the Debtor's Testimony
The remaining evidence is not sufficient to establish that the Debtor owes a debt to Fujitec and, via subrogation, the Plaintiff. This Court begins with Mr. Okuda's testimony. Mr. Okuda testified that when he came to the United States in March of 2011, the Debtor was already Fujitec's Chief Legal Officer. He testified that Fujitec found some "problems" with the Debtor and the Debtor was asked to resign in February of 2012. Upon cross-examination, however, Mr. Okuda conceded that the decision to terminate the Debtor had nothing to do with the present allegations. Moreover, Mr. Okuda did not testify to the specifics of Debtor's alleged misconduct at Fujitec, except to deny being aware of it, and to state that he was not involved in the investigation. His testimony was similarly vague on the issue of damages. Mr. Okuda testified in very general terms to the amount of damages arising from the Debtor's wrongful actions, stating that he believed the damages totaled $224,000, including "something like $180,000" reimbursement to Fujitec from the Plaintiff plus "$40,000 something" for the cost of the investigation. This Court affords no weight to Mr. Okuda's testimony regarding the amount of damages given his lack of personal knowledge.
*667 That leaves the Debtor's testimony. During his testimony, the Debtor admitted to settling fictitious lawsuits for Fujitec, although he said he was asked to do so by Mr. Okuda in order to justify the current accrual in the budget for settling claims and lawsuits. The Debtor testified that the funds received from the settlement of fictitious lawsuits were not converted by him but were, in large part, applied to legitimate Fujitec business expenses. The Debtor asserted that the only debt owed to Fujitec was the $5,000 in court ordered restitution, which he had already paid. Accordingly, neither the Debtor's testimony nor the guilty plea and related judgment entry ordering restitution establish a debt beyond the $5,000 that the Debtor has already paid to Fujitec.
3. Plaintiff's Claim for Recovery of the Costs of Investigation
Without proof of an underlying debt properly founded on nonbankruptcy law, the Plaintiff has provided this Court with no basis for holding the Debtor liable for Fujitec or the Plaintiff's investigative expenses. Even if there was a basis, the only evidence of the expenses were the differing statements from Plaintiff's counsel, Mr. Pleiman and Mr. Okuda that the investigation cost $49,395, "just over" $48,000, and "$40,000 something" respectively. The Plaintiff proffered no invoice or itemization of the costs in support of these statements.
IV. CONCLUSION
For the reasons stated above, this Court concludes that Plaintiff Federal Insurance Company failed to establish that the Debtor owes a debt beyond the $5,000 in restitution that the Debtor has already paid. As such, judgment is rendered in favor of the Defendant-Debtor Darren Lee Courtney.
This opinion constitutes this Court's findings of facts and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.
SO ORDERED.

In addition to his hearsay objection, the Debtor objected to the documentary evidence for the Plaintiff's failure to lay the proper foundation for authentication of the records. As noted above, meeting the Business Records Exception to the hearsay rule would satisfy the authentication requirement.

Rule 803(6) also provides for the foundation being laid through a certification that complies with Rule 902(11) (for authenticating certified domestic records of regularly conducted activity) or Rule 902(12) (for authenticating certified foreign records of regularly conducted activity) or with a statute permitting certification. Fed. R. Evid. 803(6)(D). In response to the Debtor's evidentiary objections for lack of authentication, the Plaintiff did not attempt to lay a foundation through a certification or statute permitting certification. However, this Court notes that letters purportedly from a records custodian of Huntington National Bank sent to the Warren County Prosecutor's office with bank statements and signature cards were included in the Plaintiff's exhibits [Pl. Ex. 2, p. 57; Ex. 3, p. 1 and Ex. 5, p. 1]. The Huntington National Bank letters were not discussed or mentioned by Plaintiff's counsel during the trial and he did not attempt to lay the foundation for admission of any documents through these letters. See Streets v. United States , 2014 U.S. Dist. LEXIS 37704, at *25, 2014 WL 1119618, at *9 (S.D. Ohio March 20, 2014) (noting that a court need not make a party's case by scouring a voluminous record or various submissions to piece together an appropriate argument).

When first asked what he did to authenticate the documents, Mr. Pleiman responded that he conducted online searches to see if the law firms were real or fictitious and reviewed expense reimbursement requests to compare against invoices to see if they were fabricated or legitimate. While those searches were important to Mr. Pleiman's investigation into the Debtor's alleged misconduct, they do not serve to authenticate that the records received from Fujitec were what they purported to be.

Upon the Debtor's objection, the Plaintiff did not lay a foundation to authenticate the Computer Records nor specifically argue that the Computer Records are admissible under a hearsay exception.

While Mr. Okuda testified that Fujitec gave Mr. Pleiman the computer, the details on how the computer and its data were maintained by Fujitec, how the relevant data was recovered, and how it was traced to the Debtor were not provided.

Two employees of Fujitec, Mr. Okuda, its President, and Mr. Raymond Gibson, its Chief Financial Officer were listed on Plaintiff's Witness List as lay witnesses who would testify about the thefts committed by Debtor while employed at Fujitec, damages and the Release proffered by Debtor [Docket Number 46]. While Mr. Okuda did take the stand, he did not testify to any first-hand knowledge of the thefts or damages and was not involved in the investigation. Mr. Gibson, for reasons unknown to this Court, was not called by the Plaintiff to testify.

In Lake States Commodities , the court cited two examples where it appears that a court granted judgment based solely on expert testimony. 271 B.R. at 586 (citing Babitt v. Schwartz (In re Lollipop, Inc.) , 205 B.R. 682 (Bankr. E.D.N.Y. 1997) and Floyd v. Dunson (In re Ramirez Rodriguez) , 209 B.R. 424 (Bankr. S.D. Tex. 1997) ). However, the court noted that both opinions were decided on summary judgment where the court's function was not to assess the weight or credibility of the evidence but only decide if a genuine issue of material fact existed for trial. Lake States Commodities, 271 B.R. at 586.

While Mr. Okuda testified at trial, his testimony established that he was not personally involved in the investigation.

Indeed, the copies of checks included in Plaintiff's exhibits 2-4 do not appear to total $150,125.